N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KAULI SAILI, JR., | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) Case No. |
| WASTE MANAGEMENT OF KANSAS, INC., | ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

The plaintiff, Kauli Saili, Jr., states and alleges the following claims for relief against the defendant, Waste Management of Kansas, Inc.

## JURISDICTION AND VENUE

1. This is an employment case based upon and arising under 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended ("Title VII") 42 U.S.C. § 2000e, et seq.

2. This court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1331, since these claims arise under federal statutory law. Some of the plaintiff's claims were included in a timely administrative charge filed with the Equal Employment Opportunity Commission. A right-to-sue letter was issued to the plaintiff regarding these claims, and this action was filed within 90 days after receipt of the right-to-sue letter.

3. All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. §1391(b)-(c).

1

## PARTIES

4. The plaintiff, Kauli Saili, Jr., is a Pacific Islander with dark skin tone, and his national origin is American Samoan. He resides in Topeka, Kansas, and he was employed by the defendant for over five years.

5. The defendant, Waste Management of Kansas, Inc. ("Waste Management"), is a corporation with its principal place of business in Houston, Texas. Waste Management owns and operates Rolling Meadows Landfill and Recycling Center in Topeka, Kansas ("Rolling Meadows").

## FACTUAL ALLEGATIONS

6. Mr. Saili has over 23 years of experience in operating heavy equipment, and he was hired by Waste Management in 2016. Mr. Saili was initially assigned to Waste Management's landfill in Johnson County, Kansas, but he was eventually transferred to Rolling Meadows to work as a Heavy Equipment Operator. At that point in time, the Lead Heavy Equipment operator was Robert Smith, who is African American.

7. On October 7, 2019, Mr. Saili filed a voluntary petition for bankruptcy under Chapter 13. On November 22, 2019, the Bankruptcy Court confirmed Mr. Saili's Chapter 13 plan.

8. In December of 2020, Mr. Saili requested, and was granted, leave under the Family and Medical Leave Act ("FMLA"). During the next few months, Mr. Saili used his FMLA leave on an intermittent basis.

9. On May 18, 2021, Mr. Smith was terminated from his employment with Waste Management by his local supervisor and by his regional supervisor. After Mr. Smith had been terminated from his employment, Mr. Saili made it known to the supervisors at

Rolling Meadows that he was interested in the position of Lead Heavy Equipment Operator, which had become vacant upon Mr. Smith's termination.

10. At the end of May of 2021, Keith Cain was promoted to the position of Lead Heavy Equipment Operator at Rolling Meadows. Mr. Cain, who is white, had worked at Rolling Meadows for only about one year, and he had been trained by Mr. Saili.

11. On June 21, 2021, Mr. Cain was promoted to the position of Operations Manager at Rolling Meadows. This was a newly created position which was never posted as being open.

12. After Mr. Cain had been promoted to the position of Operations Manager, Mr. Saili began using his FMLA leave on a continuous basis because of stress- related issues. As a result, Waste Management approved an administrative leave of absence for Mr. Saili.

13. On December 27, 2021, Mr. Saili applied for long-term disability benefits under a group insurance policy issued to Waste Management. Mr. Saili was eventually approved to receive long-term disability benefits under Waste Management's policy, retroactive to December 27, 2021. Mr. Saili received these benefits for about ten months.

14. On February 10, 2022, Mr. Saili filed a lawsuit against Waste Management in the District Court of Kansas, which was docketed as Case No. 22-2060-DDC. In this lawsuit, Mr. Saili asserted claims against Waste Management for a race-based hostile work environment, race discrimination, and FMLA retaliation.

15. On November 7, 2022, the District Court in Case No. 22-2060-DDC granted summary judgment in favor of Waste Management and against Mr. Saili. The District Court concluded that judicial estoppel barred Mr. Saili from pursuing his employment discrimination claims against Waste Management because he had failed to disclose the existence of those claims in his pending Chapter 13 bankruptcy proceedings.

16. On September 18, 2023, the United States Court of Appeals for the Tenth circuit affirmed the summary judgment in favor of Waste Management in Case No. 22-2060-DDC. The Tenth Circuit likewise concluded that judicial estoppel barred Mr. Saili from pursuing his employment discrimination claims against Waste management because he had failed to disclose the existence of those claims in his pending Chapter 13 bankruptcy proceedings.

17. On October 18, 2023, the Bankruptcy Court entered an order dismissing Mr. Saili's pending Chapter 13 bankruptcy proceedings. The Bankruptcy Court entered the order of dismissal because Mr. Saili had failed to make payments as required by the Chapter 13 plan.

18. In the latter part of November of 2023, Mr. Saili called Waste Management to inquire about returning to work from his leave of absence. He was told by a Human Resources employee of Waste Management that his leave of absence had expired. This was the first time that he learned his leave of absence had expired. He was also told by the employee that he could apply for any open position at Waste Management.

19. On or about December 8, 2023, Mr. Saili applied for an open position at Waste Management as a Heavy Equipment Operator. Shortly thereafter, he was scheduled for an in-person interview in Wathena, Kansas, on December 20, 2023.

20. However, on December 19, 2023. Mr. Saili received an email from Waste Management, informing him that his interview for the position of Heavy Equipment Operator had been cancelled. Mr. Saili immediately sent a reply email back to Waste Management, saying : "Can you please state the reason?" A few minutes later, Mr. Saili received another email from Waste Management, which stated:

> Thank you for taking the time to express interest in the Heavy Equipment Operator – 2312357 position. Unfortunately, at this time we are unable to move you forward in the hiring process.
>
> New positions are opening every day across the company and although this opportunity did not work out, we encourage you to check out Careers.WM.com for current and future openings.

21. On or about January 7, 2025, Mr. Saili applied for another open position at Waste Management as a Heavy Equipment Operator. On January 7, 2025, Mr. Saili received an email from Waste Management, stating in relevant part:

> Thank you for your interest in employment with Waste Management! Your application for – Waste Management – Heavy Equipment Operator (2327487) position has been reviewed and we would like to schedule a phone interview with you to discuss your qualifications in more detail. Please return my call at your earliest convenience.

22. A few hours later on January 7, 2025. Mr. Saili sent a reply email back to Waste Management, stating:

> Hello Tesha, I am emailing you to let you know that I have [been] trying to call but it just keeps going to voicemail. My number is 785***1147.

23. On January 8, 2025, Mr. Saili received an email from Waste Management, which stated:

> Thank you for taking the time to express your interest in the Heavy Equipment Operator Landfill – 2327487 position. Unfortunately, at this time we are unable to move you forward in the hiring process
>
> New positions are opening every day across the company and although this opportunity did not work out, we encourage you to check out Careers. WM.com for current and future openings.

24. On or about February 20, 2025, Mr. Saili applied for yet another open position at Waste Management as a Heavy Equipment Operator. On February 20, 2025, Mr. Saili received an email from Waste Management, stating in relevant part:

> Thank you for your interest in employment with Waste Management! Your application for – Waste Management, Heavy Equipment Operator, Los Lunas, NM, #2328602, has been reviewed and we would like to schedule a phone interview with you to discuss your qualifications in more detail.
>
> Please return our call at your earliest convenience.

25. However, once again, a few hours later on February 20, 2025, Mr. Saili received an email from Waste Management, which stated:

> Thank you for taking the time to express your interest in the Heavy Equipment Operator Landfill – 2328602 position. Unfortunately, at this time we are unable to move you forward in the hiring process.
>
> New positions are opening every day across the company and although this opportunity did not work out, we encourage you to check out Careers. WM.com for current and future openings.

6

## **COUNT I: RETALIATION FOR ENGAGING IN PROTECTED ACTIVITIES**

26. All of the above paragraphs are incorporated into Count I by reference.

27. Mr. Saili engaged in protected activities under Title VII and 42 U.S.C § 1981 by filing and litigating Case No. 22-2060 against Waste Management in the United States District Court of Kansas, and in the United States Court of Appeals for the Tenth Circuit.

28. Waste Management retaliated against Mr. Saili for filing and Litigating Case No. 22-2060 by refusing to hire him, or even interview him, for several open positions at Waste Management as a Heavy Equipment Operator. Waste Managements' retaliatory conduct commenced in December of 2023, and continued through February of 2025. Waste Management's retaliatory conduct violated Title VII and 42 U.S.C. § 1981.

29. As a result of Waste Managements' retaliatory conduct, Mr. Saili has suffered damages in the form of loss of past and future compensation and benefits, emotional distress, mental anguish, and loss of enjoyment of life.

30. In retaliating against Mr. Saili, Waste Management acted with malice or with reckless indifference to Mr. Saili's federally protected rights. Consequently, Waste Management is liable for punitive damages.

Wherefore, Mr. Saili prays for judgment against Waste Management for damages in excess of $300,000.00, consisting of loss of past and future compensation and benefits, emotional distress, mental anguish, loss of enjoyment of life, and punitive damages, plus attorney fees, prejudgment interest and litigation expenses.

## **COUNT II: RACE DISCRIMINATION**

31. All of the above paragraphs are incorporated into Count II by reference

32. Waste Management discriminated against Mr. Saili because of his race and/or his national origin by treating him less favorably than similarly situated former employees who are white. Specifically, Waste Management discriminated against Mr. Saili by refusing to hire him, or even interview him, for several open positions at Waste Management. This discriminatory conducted commenced in December of 2023, and continued through February of 2025. Waste Management's discriminatory conduct violated Title VII and 42 U.S.C. § 1981.

33. As a result of Waste Management's discriminatory conduct, Mr. Saili has suffered damages in the form of loss of past and future compensation and benefits, emotional distress, mental anguish, and loss of enjoyment of life.

34. In discriminating against Mr. Saili, Waste Management acted with malice or with reckless indifference to Mr. Saili's federally protected rights. Consequently, Waste Management is liable for punitive damages.

Wherefore, Mr. Saili prays for judgment against Waste Management for damages in excess of $300,000.00, consisting of loss of past and future compensation and benefits, emotional distress, mental anguish, loss of enjoyment of life, and punitive damages, plus attorney fees, prejudgment interest, and litigation expenses.

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

## DESIGNATION OF PLACE OF TRIAL

The plaintiff requests that Kansas City, Kansas, be designated as the place of trial in the above captioned matter.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY: s/Alan V. Johnson
Alan V. Johnson, KS #9992
ajohnson@sloanlawfirm.com
534 South Kansas Avenue, Suite 1000
Topeka, Kansas 66603-3456
785-357-6311
Attorneys for Plaintiff